No. 24-1512

In the United States Court of Appeals
for the Fourth Circuit

NORTH CAROLINA A. PHILIP RANDOLPH INSTITUTE; ACTION
NC,

*Plaintiffs-Appellees*,

v.

NORTH CAROLINA STATE BOARD OF ELECTIONS, et al.,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the Middle District of North Carolina

**OPENING BRIEF OF DEFENDANTS-APPELLANTS**

Dated: November 21, 2024

JOSHUA H. STEIN
ATTORNEY GENERAL
N.C. Department of Justice
Post Office Box 629
Raleigh, NC 27602
(919) 716-6400

Terence Steed
Mary Carla Babb
Special Deputy Attorneys General
tsteed@ncdoj.gov
mcbabb@ncdoj.gov

Elizabeth Curran O'Brien
Special Deputy Attorney General
eobrien@ncdoj.gov

*Counsel for State Board Defendants*

*Counsel for District Attorney Defendants*

# CORPORATE DISCLOSURE STATEMENT

We certify, pursuant to Federal Rule of Appellate Procedure 26.1 and Local Rule 26.1, that Defendants-Appellants are not in any part a publicly held corporation, a publicly held entity, or a trade association, and that no publicly held corporation or other publicly held entity has a direct financial interest in the outcome of this litigation.

Dated: November 21, 2024

/s/ Mary Carla Babb
Mary Carla Babb
Special Deputy Attorney General

*Counsel for State Board Defendants*


/s/ Elizabeth Curran O'Brien
Elizabeth Curran O'Brien
Deputy Attorney General

*Counsel for District Attorney Defendants*

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ............................................ii

TABLE OF AUTHORITIES ..................................................................vii

JURISDICTIONAL STATEMENT ..........................................................1

ISSUES PRESENTED ............................................................................2

INTRODUCTION....................................................................................2

STATEMENT OF THE CASE ................................................................5

      A.    North Carolina bars felons from voting and changes the rules that prohibit felon voting as time passes. .......................................................................5

      B.    Plaintiffs sue North Carolina concerning its statute that criminalizes voting by felons whose rights have not been restored. ....................................11

      C.    North Carolina amends its statute that criminalizes felon voting, and the district court enjoins the earlier non-amended version of the statute. .......................................................................13

SUMMARY OF THE ARGUMENT ........................................................19

ARGUMENT ..........................................................................................22

Standard of Review ..............................................................................22

I.    The Claims on Which the District Court Awarded Plaintiffs Summary Judgment Are Moot.......................................................22

II.   The District Court Erred in Concluding That the Prior Version of Section 163-275(5) Is Unconstitutional. ........................................28

A.      Section 163-275(5) does not deny equal
        protection...................................................................29

B.      The district court erred by concluding that section
        163-275(5) violates due process. ...................................34

        1.      The district court erred when it granted
                summary judgment on an unpled theory of
                liability. .............................................................35

        2.      An exercise of prosecutorial discretion does
                not render a statute unconstitutionally
                vague. .................................................................37

CONCLUSION ...........................................................................44

CERTIFICATE OF SERVICE...................................................46

CERTIFICATE OF COMPLIANCE.........................................47

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Beckles v. United States,*
    580 U.S. 256 (2017) ................................................... 35

*Chicago Joe's Tea Room, LLC v. Village of Broadview,*
    894 F.3d 807 (7th Cir. 2018) ....................................... 27

*City News & Novelty, Inc. v. City of Waukesha,*
    531 U.S. 278 (2001) .............................................. 25, 26

*Cloaninger ex rel. Estate of Cloaninger v. McDevitt,*
    555 F.3d 324 (4th Cir. 2009) ....................................... 36

*Cotton v. Fordice,*
    157 F.3d 388 (5th Cir. 1998) .................................. 32, 33

*Dixon v. Coburg Dairy, Inc.,*
    369 F.3d 811 (4th Cir. 2004) ....................................... 22

*Gordon v. Schilling,*
    937 F.3d 348 (4th Cir. 2019) ....................................... 22

*Harness v. Watson,*
    47 F.4th 296 (5th Circ 2022), *cert. denied,* 143 S. Ct. 2426
    (2023) .......................................................................... 32

*Hayden v. Paterson,*
    594 F.3d 150 (2d Cir. 2010) ......................................... 32

*Hoffman Estates v. Flipside, Hoffman Estates,*
    455 U.S. 489 (1982) ..................................................... 35

*Hunter v. Underwood,*
    471 U.S. 222 (1985) .............................................. 29, 32

*Johnson v. Governor of Fla.*,
    405 F.3d 1214 (11th Cir. 2005) ...................................................... 32

*Kolender v. Lawson*,
    461 U.S. 352 (1983) ................................................... 37, 38, 39

*Lighthouse Fellowship Church v. Northam*,
    20 F.4th 157 (4th Cir. 2021) .......................................... 25

*Louie v. Dickson*,
    964 F.3d 50 (D.C. Cir. 2020) ......................................... 27

*McCleskey v. Kemp*,
    481 U.S. 279 (2007) ................................................... 39, 44

*N.C. State Conf. of the NAACP v. Raymond*,
    981 F.3d 295 (4th Cir. 2020) ......................................... 30, 31

*Quillen v. Int'l Playtex, Inc.*,
    789 F.2d 1041 (4th Cir. 1986) ........................................ 36

*Savage v. Maryland*,
    896 F.3d 260 (4th Cir. 2018) ......................................... 39

*Sharma v. Hirsch*,
    No. 23-2164, 2024 WL 4776214 (4th Cir. Nov. 14, 2024) ............. 23

*Smith v. Becerra*,
    44 F.4th 1238 (10th Cir. 2022) ....................................... 27

*Spence v. Washington*,
    418 U.S. 405 (1974) .................................................. 39

*Terry v. Ohio*,
    392 U.S. 1 (1968) .................................................... 38

*United States Dep't of Treasury v. Galioto*,
    477 U.S. 556 (1986) .................................................. 25

*United States v. Springer,*
715 F.3d 535 (4th Cir. 2013) .................................................. 16, 23

*United States v. Vega,*
960 F.3d 669 (5th Cir. 2020) ...................................................... 27

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,*
429 U.S. 252 (1977) ................................................................ 29, 30

*State v. Spicer,*
299 N.C. 309, 261 S.E.2d 893 (1980) ......................................... 41

## Constitutional Provisions

U.S. Const. art. III, § 2 ............................................................. 22

U.S. Const. amend. XIV, § 1 ....................................................... 29

1776 N.C. Const. art. I, § 4 (as amended in 1935) .................... 5

1868 N.C. Const. art. VI, § 2 (as amended in 1899) ................. 9

1868 N.C. Const. art. VI, § 2 ...................................................... 6

1971 N.C. Const. art. VI, § 2 ..................................................... 10

N.C. Const. art. VI ...................................................................... 8

N.C. Const. art. VI, § 2 ............................................................... 5

## Statutes

28 U.S.C. § 1291 .......................................................................... 1

42 U.S.C. § 1983 .......................................................................... 1

N.C. Gen. Stat. § 163-275(5) .......................................................... passim

N.C. Gen. Stat. § 163-55............................................................... 10

## Session Laws

*Act of Aug. 17, 2023,*
 S.L. No. 2023-140 ................................................................... 14, 24

## Rules

Fed. R. App. P. 4(a)(1)(A) ............................................................ 1

## Other Authorities

*John V. Orth, North Carolina Constitutional History,*
 70 N.C. L. Rev. 1759 (1992) ................................................... 5, 6

# JURISDICTIONAL STATEMENT

This is an appeal by Defendants, the North Carolina State Board of Elections, its Executive Director, and its members ("State Board Defendants"), as well as the State's forty-two independently elected district attorneys ("District Attorney Defendants"), from the April 30, 2024 final order of the district court granting Plaintiffs relief on their claims brought under 42 U.S.C. § 1983. JA 1568-1571.

Defendants' notice of appeal was timely filed within thirty days after final judgment was entered, on May 30, 2024. JA 1569-1571; *see* Fed. R. App. P. 4(a)(1)(A). This Court's jurisdiction is properly invoked pursuant to 28 U.S.C. § 1291.

For the reasons argued below, the district court did not have subject matter jurisdiction to enter its final order. *See infra* Part I.

# ISSUES PRESENTED

1. **Did the district court err in entering judgment against Defendants after Plaintiffs' claims became moot and deprived the court of jurisdiction?**

2. **If the district court had jurisdiction, did it err in holding that the prior version of section 163-275(5) of the North Carolina General Statutes violates the United States Constitution?**

# INTRODUCTION

In this lawsuit, Plaintiffs, two organizations that seek to increase voter participation of North Carolina's Black and low-income communities, challenged the constitutionality of section 163-275(5) of the North Carolina General Statutes. This statute makes it a crime for persons who have been convicted of a felony to vote before their voting rights have been restored. Plaintiffs argued that this statute has impeded their mission of increasing voter participation by requiring them to spend time educating volunteers and prospective voters about the statute's requirements.

On the merits, Plaintiffs argued that the statute denies voters equal protection because it was enacted with discriminatory animus against Black voters. In asserting this claim, Plaintiffs relied on the

fact that the statute allowed for persons to be convicted even when they voted under a mistaken belief that their voting rights had already been restored.

Plaintiffs also separately argued that the statute denies voters due process because it is unconstitutionally vague. In support of this claim, Plaintiffs argued that some district attorneys have prosecuted persons who allegedly voted under the mistaken impression that they were allowed to do so, while others have declined to prosecute such voters. Plaintiffs claimed that these divergent decisions show that the statute lacks adequate guiding standards and is therefore vague.

While Plaintiffs' claims against the statute were pending, however, the North Carolina General Assembly amended the statute with respect to future elections. Under the amended statute, persons now can only be prosecuted if they knowingly vote illegally—*i.e.*, by voting in an election knowing their right of citizenship has not been restored.

Despite this new enactment, the district court below nonetheless granted Plaintiffs summary judgment on their claims with respect to

the old pre-amendment version of the statute. The court also enjoined enforcement of the pre-amendment version of the statute with respect to theoretical prosecutions concerning past elections.

These rulings were erroneous. As an initial matter, the district court erred by ruling on Plaintiffs' claims at all because those claims have become moot. Given the amendments that have been made to the statute, Plaintiffs lost the concrete interest they once had in this lawsuit's outcome. Specifically, Plaintiffs' only interest in this lawsuit is in educating voters on their rights for future elections. But the portions of the statute that Plaintiffs challenge no longer apply to future elections. That statute therefore can no longer interfere with their efforts to increase participation in those elections.

Even if this Court disagrees and concludes that the district court was right to rule on Plaintiffs' claims, the decisions below should still be reversed because Plaintiffs' claims fail on the merits. The pre-amendment version of the statute does not deny equal protection because changes to North Carolina law after its enactment severed the original statute's discriminatory animus. The prior version of the

statute also does not deny due process, because the prosecutorial decisions that Plaintiffs relied on to support their vagueness claim reflect routine exercises of prosecutorial discretion, not the application of a standardless statute that is unconstitutionally vague.

The district court's decision should therefore be reversed.

## STATEMENT OF THE CASE

**A.** **North Carolina bars felons from voting and changes the rules that prohibit felon voting as time passes.**

The North Carolina Constitution forbids a person convicted of a felony from voting "unless that person shall be first restored to the rights of citizenship in the manner prescribed by law." N.C. Const. art. VI, § 2(3). A version of this felony-disqualification provision has existed in the North Carolina Constitution since 1835, when it was added as an amendment to the original 1776 Constitution. 1776 N.C. Const. art. I, § 4, cls. 3–4, as amended in 1935; *see also* John V. Orth, *North Carolina Constitutional History*, 70 N.C. L. Rev. 1759, 1771 (1992).

North Carolina replaced its 1776 Constitution in 1868 as part of its readmittance to the Union following the Civil War. *Orth*, 70 N.C. L.

Rev. at 1771.  The 1868 Constitution contained a similar provision disqualifying felons.  1868 N.C. Const. art. VI, § 2.

To enforce the state Constitution's felony-disqualification provision, in 1877, North Carolina enacted a statute that punished voting by felons before their rights were restored.  JA 410.  The 1877 statute stated that "if any person so convicted [of any crime which excludes him from the right of suffrage] shall vote at the election, without having been legally restored to the rights of citizenship, he shall be deemed guilty of an infamous crime, and, on conviction thereof, shall be punished by a fine not exceeding one thousand dollars, or imprisoned at hard labor not exceeding two years, or both."  JA 410.

In 1899, North Carolina reenacted the same statute, altering it only minimally.  JA 429.  Defendants do not dispute that the 1877 and 1899 versions of the challenged law were enacted with discriminatory intent.  Specifically, Defendants agree that the historical record shows that these versions of the law were enacted with the specific intent to disenfranchise Black voters.  *See generally* JA 144-150.

In 1931, North Carolina reenacted the same statute again, this time as part of an act aimed at punishing corrupt actions related to primaries and elections.  *See* JA 431-436.  The 1931 Act set forth multiple actions related to elections to be punished as misdemeanors and felonies and moved all such provisions from the chapter governing criminal law to the chapter governing elections.  JA 431-436.  At that time, the North Carolina General Assembly altered the substantive language of the conduct criminalized by the current section 163-275(5).  Specifically, the 1931 Act made the statute not only apply to voting in general elections, but also in primaries.  JA 435.

In 1971, the enactment of a new state Constitution altered and expanded the scope of section 163-275(5).  In 1968, at the Governor's request, the North Carolina State Bar and the North Carolina Bar Association jointly reviewed the 1868 Constitution to consider whether it should be amended.  *See* JA 442.  Ultimately, the Commission determined that the 1868 Constitution required so many revisions that an entirely new Constitution was necessary.  JA 450-451, 455-458.  For example, the Commission noted that the prior Constitution contained

"several provisions that are invalid because in conflict with the Constitution of the United States, such as the provision on racial segregation in the public schools." JA 450. The Commission expressly stated its objective was to "eliminate from the constitution obsolete and unconstitutional provisions." JA 455.

The Commission drafted a new Constitution, with explanatory comments, and submitted it to the General Assembly for consideration on December 16, 1968. JA 442. In its submission to the legislature, the Commission stated that it had proposed relatively few substantive changes to Article VI of the Constitution, which governs suffrage and eligibility for office. Of those substantive changes, the Committee proposed revisions to the Article's provisions that govern felon disenfranchisement, which would extend it to additional classes of felons, such as persons convicted of felonies in other states who would newly lose their voting rights in North Carolina. JA 529.

In 1969, the General Assembly took up the proposed new Constitution. *See* JA 1285-1310. The approving legislation was passed unanimously in the Senate and with only one nay vote in the House.

*See* JA 1312-1313, 1315-1316.  Accordingly, the proposed Constitution was presented to the people for ratification during the general election of 1970.  On November 3, 1970, the new Constitution was approved by a vote of 393,759 to 251,132.  *See* JA 1318.  On July 1, 1971, the newly ratified Constitution went into effect.  JA 1318.

As part of this process, the General Assembly and the people of North Carolina approved new language defining the scope of persons subject to exclusion from the right of suffrage.  The previous 1868 Constitution had set forth the disqualification as follows:

> No person who has been convicted, or who has confessed his guilt in open court upon indictment, of any crime, the punishment of which now is, or may hereafter be, imprisonment in the State's Prison, shall be permitted to vote unless the said person shall be first restored to citizenship in the manner prescribed by law.

1868 N.C. Const., art. VI, § 2, as amended in 1899.

The 1971 Constitution substantively altered this language.  It modified the provision to provide that it excluded from the right of suffrage "person[s] adjudged guilty of a felony against this State or the United States, or adjudged guilty of a felony in another state that also would be a felony if it had been committed in this State."  JA 643.

This 1971 constitutional amendment in turn modified and altered how North Carolina's statutes that govern felon disenfranchisement operate. Specifically, section 163-275(5) makes it a crime for "person[s] convicted of a crime which excludes the person from the right of suffrage" to vote before their rights are restored. The persons who are excluded from the right of suffrage under the statute are identified in Article VI, section 2, clause 3, of the 1971 Constitution.

Likewise, the 1971 constitutional amendment resulted in express conforming amendments being made to North Carolina's statutes that govern felon disenfranchisement. Section 163-55 of the General Statutes sets forth qualifications for and exclusions from voting. This statutory provision was amended in 1973 to reflect the 1971 constitutional amendment's expansion of the scope of felon disenfranchisement to include persons convicted of federal and out-of-state felonies. *See* JA 661.

**B.      Plaintiffs sue North Carolina concerning its statute that criminalizes voting by felons whose rights have not been restored.**

In 2020, Plaintiffs, the North Carolina A. Phillip Randolph Institute and Action N.C., filed the present action against the North Carolina State Board of Elections, its Executive Director, and its members, challenging section 163-275(5), alleging the statute violated the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution because it had been enacted with racially discriminatory intent. JA 100-101. In support of this claim, Plaintiffs stated that section 163-275(5) remained unchanged since its original enactment in 1877, pointing out specifically that the statute still made voting while ineligible a felony, and that it contained no requirement that persons prosecuted under the statute act with scienter. JA 45-46. Given these features, Plaintiffs contended that the statute could potentially be used to punish persons for voting even if they "mistakenly believe[d] they [were] eligible to vote." JA 45.

Separately, Plaintiffs alleged that the statute offended the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution

because it was unconstitutionally vague.  JA 97-99.  In support of that claim, Plaintiffs argued that the statute was vague because it did not "provide individuals of ordinary intelligence fair notice of what conduct is prohibited" or expressly specify how a prospective voter could be "restored to the rights of citizenship" and thereby regain their right to vote.  JA 97-98 (quoting N.C. Gen. Stat. § 163-55(5) (2020)).  Nowhere in their complaint did Plaintiffs allege that the statute was vague because it had not provided a sufficiently clear standard to prevent arbitrary enforcement.

In their complaint, Plaintiffs alleged that section 163-275(5) "substantially impeded" their mission of "increasing political participation among the residents of North Carolina through voter registration and get-out-the-vote-activities," including their work "persuading eligible Black individuals with criminal convictions to register to vote."  JA 50-52, 95.  The statute's lack of a scienter requirement, Plaintiffs alleged, created a risk that "prospective voters" would accidently violate the law by voting when they were not allowed to do so.  JA 95-96.  That risk, Plaintiffs claimed, required Plaintiffs to

divert "time, money, and resources . . . to educate volunteers on the potential risks of registering an individual with a felony conviction, and to caution community members of the potential risks of voting after a felony conviction before sentence completion."  JA 50-51.

Based on these concerns, Plaintiffs sought declaratory relief, as well as preliminary and permanent injunctive relief.  JA 102.  In ruling on Plaintiffs' motion for a preliminary injunction, the district court held that Plaintiffs had standing because they had "diverted substantial time and resources from [their] voter registration and get-out-the-vote activities to reassure eligible individuals that voting will not lead to criminal prosecution," which impeded Plaintiffs' ability "to carry out their missions."  JA 113 (citations omitted), 126.  The court, however, nonetheless denied Plaintiffs' motion for a preliminary injunction, because it held that they could not show irreparable harm.  JA 123, 126.

**C.    North Carolina amends its statute that criminalizes felon voting, and the district court enjoins the earlier non-amended version of the statute.**

After Plaintiffs filed an amended complaint, adding each of the 42 district attorneys as defendants, JA 127-190, who unsuccessfully moved

to dismiss this case, JA 211-218, Plaintiffs moved for summary judgment, JA 289-291.

While that summary judgment motion was pending, the North Carolina General Assembly amended section 163-275(5), adding a scienter requirement that means the statute is only offended if persons vote while knowing that their right to vote has not been restored. Act of Aug. 17, 2023, S.L. No. 2023-140, § 38 (amending N.C. Gen. Stat. § 163-275(5)), provided at JA 1379. Effective January 1, 2024, and applying to all elections held thereafter, *see id.,* § 50, section 163-275(5) now provides that it is a felony for "any person convicted of a crime which excludes the person from the right of suffrage, to vote in any primary or election *knowing* the right of citizenship has not been restored in due course and by the method provided by law." N.C. Gen. Stat. § 163-275(5) (emphasis added).

Given this enactment, the magistrate judge overseeing this case asked the parties to submit briefing addressing the effect of the amendment on Plaintiffs' claims. JA 38. Despite the amendment, Plaintiffs maintained that the action was not moot. JA 1381-1382.

14

Plaintiffs contended that the amendment failed to fully address their claims, given that North Carolina voters could still theoretically face prosecution under pre-amendment section 163-275(5) for past violations, as there is no statute of limitations for felonies under North Carolina law.  JA 1381-1382.  Plaintiffs argued that "[a]s long as the risk of prosecution under the existing Law remain[ed], Plaintiffs' voter organization efforts [would] be impeded."  JA 1383.

In response, Defendants showed that the amendment mooted Plaintiffs' claims, because Plaintiffs did not retain any concrete interest in the litigation given that they could no longer claim that "the risk that prospective voters [would] be prosecuted on a strict-liability basis for voting unlawfully" would require Plaintiffs to "divert resources which would otherwise be used for other voter-education purposes."  JA 1390.

After receiving this briefing, the magistrate judge recommended that the action be dismissed for lack of subject matter jurisdiction because the case had become moot.  JA 1397.  In the magistrate judge's recommendation, the magistrate explained that the case had become moot because under the amended statute, a "voter can only violate the

felony disenfranchisement statute if he or she already knows they are ineligible to vote, intentionally disregards the law, and casts a ballot." JA 1414. Given this change, the magistrate judge explained, Plaintiffs can no longer claim diversion of substantial resources to educate their volunteers and prospective voters in support of their stated core mission: get out the vote efforts in future elections. JA 1414, 1415, 1418.

The district court disagreed with the magistrate judge and declined to adopt the recommendation. JA 1530-1542. In the district court's analysis, it first observed that a "case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." JA 1536-1537 (quoting *United States v. Springer*, 715 F.3d 535, 540 (4th Cir. 2013)). The court then reasoned that it could grant Plaintiffs effectual relief, because Plaintiffs had partly premised their vagueness claim on the fact that the statute does not expressly specify "the actual process by which an individual's rights of citizenship are restored." JA 1540. The General Assembly, the court noted, had not amended the statute to address that issue. Given the "continued

presence" of that aspect of the statute, the court held that Plaintiffs' claims were not moot.  JA 1541.

By separate order, the district court also granted Plaintiffs' motion for summary judgment and enjoined enforcement of the prior version of section 163-275(5).  JA 1543-1567.  The court first held that Plaintiffs were entitled to summary judgment on their claim that the prior version of the statute violated the Equal Protection Clause because it was enacted with discriminatory intent.  JA 1547-1558.  The court acknowledged that North Carolina had changed its laws governing felon disenfranchisement since the statute's original enactment, through steps like amending its state Constitution.  JA 1554.  It held, however, that these changes were "insufficient to cleanse the Challenged Statute" of the discriminatory animus that motivated its initial enactment.  JA 1556-1557.

Separately, the district court also ruled on two theories that Plaintiffs advanced in their summary judgment motion to support their vagueness claim under the Due Process Clause.  JA 1558-1564.  It first rejected Plaintiffs' argument that the statute was vague because "it

does not define when an individual has 'been restored to the right of citizenship.'" JA 1565. This argument failed, the court explained, because another statute specified when such rights were restored. JA 1562.

The district court went on to hold, however, that Plaintiffs were entitled to summary judgment on the second argument that they advanced in support of their vagueness claim. Plaintiffs had argued that the statute was vague because, before its amendment, it had not provided sufficiently "clear standards to prevent arbitrary enforcement." JA 1563. The court held that Plaintiffs had shown that such standards were lacking based on how the statute had been enforced: Certain North Carolina district attorneys had declined to prosecute persons who had voted without knowing that they were barred from doing so, while other district attorneys had chosen to prosecute such voters. JA 1563. The district court reasoned that this evidence showed that some district attorneys "believed that the Challenged Statute included a requirement of intent while others did not." JA 1565. As such, the court held that the statute was

insufficiently clear on this point and thus was unconstitutionally vague. JA 1566.

For these reasons, the district court entered final judgment enjoining any further enforcement of the prior version of section 163-275(5) by Defendants. JA 1566-67, 1568. Defendants appealed. JA 1569-1571.

## SUMMARY OF THE ARGUMENT

The district court erred in granting Plaintiffs summary judgment on their claims.

As an initial matter, the district court lacked jurisdiction to grant Plaintiffs summary judgment because the claims on which Plaintiffs prevailed are moot. Cases become moot when circumstances change during the pendency of a case and plaintiffs lose the concrete interest that they initially had in the case's outcome.

Here, the amendment of section 163-275(5) during the pendency of this case resulted in Plaintiffs losing their concrete interest in this case's outcome. Plaintiffs initially claimed that they had a concrete interest in this case because section 163-275(5) interfered with their

ability to encourage persons to register and vote in future elections. The version of section 163-275(5) that Plaintiffs challenge, however, has now been repealed with respect to future elections. Because a statute that does not apply to future elections cannot interfere with Plaintiffs' work with respect to those elections, Plaintiffs no longer have a concrete interest in the outcome of this case.

Even assuming for the sake of argument that the district court had jurisdiction, Plaintiffs were still not entitled to relief. Plaintiffs asserted a facial challenge to the constitutionality of pre-amendment section 163-275(5), contending that it was enacted in 1877, and reenacted in 1899, with racially discriminatory intent in violation of the Equal Protection Clause of the Fourteenth Amendment, JA 186-188, and that it is void for vagueness in violation of the Due Process Clause of the Fourteenth Amendment, JA 184-186. The district court should have denied Plaintiffs summary judgment as to both claims.

First, Plaintiffs' equal protection claim fails on the merits. It is undisputed that the predecessor to pre-amendment section 163-275(5) was initially enacted in the late 1800s with discriminatory intent. It is

also the case, however, that subsequent enactments severed the discriminatory animus that initially motivated them. Here, enactment of North Carolina's new Constitution in 1971 materially changed the rules that govern section 163-275(5)'s operation, creating a break from the history that Plaintiffs relied on to support their equal protection claim. Plaintiffs did not present any evidence in the district court that the popular action of adopting a new Constitution in 1971, or the legislation preceding that adoption, was motivated by discriminatory animus.

Second, Plaintiffs' vagueness claim also fails on the merits. Statutes are unconstitutionally vague under the Due Process Clause if they are standardless, such that they invite arbitrary enforcement. Here, pre-amendment section 163-275(5) is not standardless, but rather puts persons on notice that once the right to vote is lost due to a felony conviction, persons cannot vote again until their rights are restored.

Below, the district court held to the contrary because it believed that the decisions of certain district attorneys not to prosecute persons who voted prior to the restoration of their rights without scienter

showed that the prior version of section 163-275(5) is standardless. The district court was mistaken. The prosecutorial decisions that the district court relied on merely reflect a proper exercise of prosecutorial discretion, not an unconstitutionally standardless statute.

For these reasons, this Court should reverse the judgment of the district court.

## ARGUMENT

### Standard of Review

This Court reviews both questions of subject matter jurisdiction and a district court's summary judgment ruling de novo. *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 815 (4th Cir. 2004) (en banc); *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019).

### I.    The Claims on Which the District Court Awarded Plaintiffs Summary Judgment Are Moot.

The district court erred in granting summary judgment to Plaintiffs because Plaintiffs' claims are moot, depriving the court of jurisdiction.

Article III of the U.S. Constitution limits the power of federal courts to actual "cases and controversies." U.S. Const. art. III, § 2.

Because the "case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate . . . it is not enough that a dispute was very much alive when suit was filed." *Springer*, 715 F.3d at 540.  The parties, rather, must retain a "concrete interest" in the outcome of the litigation throughout all stages of the proceedings, *id.*, which disappears "if, at any point prior to the case's disposition, one of the elements essential to standing, like injury-in-fact, no longer obtains." *Sharma v. Hirsch*, No. 23-2164, 2024 WL 4776214, at *7 (4th Cir. Nov. 14, 2024) (quoting *Am. Fed'n of Gov't Emps. v. Off. of Special Couns.*, 1 F.4th 180, 187 (4th Cir. 2021)).  Thus, cases become moot when a plaintiff's concrete interest in a case disappears during the case's pendency, such that it becomes "impossible for a court to grant *any* effectual relief whatever to the prevailing party." *Springer*, 715 F.3d at 540 (emphasis in original) (citation omitted).

Here, Plaintiffs no longer have a concrete interest in this case due to the amendment of section 163-275(5) during this case's pendency. Before the amendment, Plaintiffs maintained that they had a concrete interest in this case because the "risk of criminal prosecution of

*prospective* voters" under the prior version of section 163-275(5)

"substantially impeded" their ability to persuade "eligible Black

individuals with criminal convictions to register to vote and vote."  JA

135-138, 183 (emphasis added).  That is, Plaintiffs maintained that the

former statute interfered with their ability to encourage *prospective*

voters to vote in *future* elections.

Due to the amendment, the concrete interest that Plaintiffs once

had in this case—preventing the statute from interfering with their

work concerning future elections—no longer exists.  As amended, the

version of the statute that Plaintiffs challenge in this lawsuit no longer

applies to "elections on or after" "January 1, 2024."  S.L. No. 2023-140, §

50, provided at JA 1379; *see also id.,* § 38.  This challenged statute did

not apply to any elections held in 2024, and it will also not apply in any

future elections either.

Plaintiffs have therefore lost their concrete interest in challenging

the statute:  A statute that has been repealed, such that it does not

apply to future elections, cannot interfere with Plaintiffs' efforts

relating to those future elections.  For that reason, the claims on which

Plaintiffs were granted summary judgment are moot.  *See, e.g., United States Dep't of Treasury v. Galioto*, 477 U.S. 556, 559 (1986) (observing that the repeal of statutes generally renders lawsuits seeking to enjoin their enforcement moot).

Below, Plaintiffs asserted the amendment to the statute did not moot their claims because North Carolina voters could still face prosecution under the pre-amendment version of the statute, given the lack of a statute of limitations for felonies in North Carolina.  JA 1381-1382.  Plaintiffs argued that "[a]s long as the risk of prosecution under the existing Law remains," their operations would be "impeded" because continued prosecutions under the former statute could cause "voter confusion."  JA 1383.

Plaintiffs, however, cannot show that they still have a concrete interest in the resolution of this case based on "speculation standing alone."  *See City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 283 (2001) (holding a live controversy is not maintained by speculation); *see also Lighthouse Fellowship Church v. Northam*, 20 F.4th 157, 164 (4th Cir. 2021) (holding that case was moot where

arguments that live controversy still existed were "entirely speculative").

Here, Plaintiffs rely on speculation alone to try to show that this case is not moot. Like the magistrate judge noted below, Plaintiffs' argument that they retain a concrete interest in this case rests on the occurrence of a chain of speculative events, under which (1) "a felon voter" would be "prosecuted under the old law" for voting in an election before 2024, (2) "other prospective voters" would "learn about the prosecution," (3) "as result of the prosecution, a prospective voter" would become "confused as to the applicability of the statute," (4) the "confused prospective voter" would approach Plaintiffs "to ask for clarification," and (5) these events would occur "with such frequency" that Plaintiffs would be "forced to divert 'significant' resources from other get-out-the-vote activities to address [this] confusion." JA 1415-1416. This sort of "speculation," which rests on the occurrence of an unlikely chain of events, is simply not enough to save Plaintiffs' claims from mootness. *See City News & Novelty*, 531 U.S. at 283.

However, the district court nonetheless held that Plaintiffs' claims were not moot. Specifically, the district court held that it was still possible for it to grant effectual relief to Plaintiffs because of the continued presence of a challenged aspect of the statute, namely the statute's failure to provide express direction on how voting rights can be restored. JA 1540. Because the General Assembly did not address this issue when it amended the statute, the court incorrectly held that *all* of Plaintiffs' claims were not mooted by the amendment. JA 1541.

The district court erred in its analysis. It is well established that mootness must be assessed "claim by claim." *Louie v. Dickson*, 964 F.3d 50, 54 (D.C. Cir. 2020) (noting that "mootness" is assessed "claim by claim").[1] The district court did not apply a claim-by-claim analysis. Instead, the court denied Defendants' mootness arguments as to *all*

---

[1] *See also United States v. Vega*, 960 F.3d 669, 673 (5th Cir. 2020) (holding that courts "must evaluate mootness on a claim-by-claim basis to determine whether each claim satisfies the constitutional requirements for Article III jurisdiction"); *Smith v. Becerra*, 44 F.4th 1238, 1247 (10th Cir. 2022) (noting that courts "take a claim-by-claim approach to mootness"); *Chicago Joe's Tea Room, LLC v. Village of Broadview*, 894 F.3d 807, 815 (7th Cir. 2018) (holding that a mootness "analysis proceeds claim by claim").

claims based on finding that *one* claim was not moot, then proceeded to decide the merits of all of Plaintiffs' claims.  Notably, the court rejected on the merits the one claim it found was not moot – Plaintiffs' vagueness claim based on the statute's lack of express direction on rights restoration.  This rejected claim has no bearing on whether Plaintiffs' *other* claims were moot.  The district court thus erred when it relied on a non-moot claim to grant summary judgment to Plaintiffs on their other claims, which as shown above, were made moot by the amendment to section 163-275(5).

## II.     The District Court Erred in Concluding That the Prior Version of Section 163-275(5) Is Unconstitutional.

For the reasons described above, the district court lacked jurisdiction to decide Plaintiffs' claims and, for that reason alone, the judgment below should be reversed.  This Court should therefore not reach the merits of Plaintiffs' constitutional claims.  However, should the Court conclude that it does have jurisdiction here, it should still reverse the decision below because Plaintiffs' claims fail on the merits.

**A.      Section 163-275(5) does not deny equal protection.**

The district court erred in granting Plaintiffs summary judgment on their claim that the prior version of section 163-275(5) denies voters equal protection. The court's holding under *Arlington Heights* that the statute is tainted with discriminatory animus is incorrect because the court failed to give proper recognition to subsequent enactments that materially changed North Carolina law in this area.

Under the Equal Protection Clause, "[n]o State shall deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. When a denial of equal protection on the basis of race is alleged, proof of racially discriminatory intent or purpose is required to show a violation. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977).

To prove discriminatory intent, it is Plaintiffs' burden to first demonstrate that racial discrimination was a "'substantial' or 'motivating' factor behind enactment of the law" that "continues to this day to have that effect." *Hunter v. Underwood*, 471 U.S. 222, 228 (1985) (internal citations omitted).

Only after it is proven that racial discrimination was a "substantial" or "motivating" factor, does a court proceed to the second step of the *Arlington Heights* test, where the burden shifts to the defendant to prove that "'the law would have been enacted without' racial discrimination." *N.C. State Conf. of the NAACP v. Raymond*, 981 F.3d 295, 303 (4th Cir. 2020) (quoting *Hunter*, 471 U.S. at 228). "It is only then that judicial deference to the legislature 'is no longer justified.'" *Id.* (quoting *Arlington Heights*, 429 U.S. at 265–66).

Here, the district court erred when it held that Plaintiffs met their burden of demonstrating that section 163-275(5) is still tainted with the original statute's discriminatory purpose. For that reason, there is no need to reach the second step in this case.

Defendants do not contest that the historical background from the original enactments of 1877 and 1899 is indefensible. Defendants further do not contest the district court's finding that section 163-275(5) currently has a disparate impact on Black North Carolinians. However, Plaintiffs' theory of the case and the district court's ruling overlooks the substantive changes to the scope of section 163-275(5) resulting from

the new 1971 Constitution proposed by the General Assembly and ratified by the voters.

The 1971 Constitution reiterated the State's commitment to disenfranchising anyone convicted of a felony, and in so doing, expanded the number of persons that section 163-275(5) reaches. Specifically, the drafters provided that the State's disenfranchisement rules would not only apply to persons convicted of felonies in North Carolina state courts, but also to persons convicted of felonies in federal court and in state courts outside North Carolina. *See* JA 661. In light of this substantive expansion of felony-based disenfranchisement, including the resultant change it caused to section 163-275(5)'s operation, there was a legally significant historical break between the original statute enacted in 1877 and 1899 and the version of section 163-275(5) as it existed last year before its recent amendment.

This Court, after all, has already recognized that subsequent legislation can "purge the taint" of prior legislation that was originally enacted with discriminatory intent. *Raymond*, 981 F.3d at 305. Indeed, in circumstances similar to those here, many other courts have rejected

equal-protection challenges to felon-disenfranchisement laws that have

been "substantively altered and reenacted . . . in the absence of any

evidence of racial bias." *Johnson v. Governor of Fla.*, 405 F.3d 1214,

1222 (11th Cir. 2005) (en banc).[2]

Here, the 1971 amendments to the North Carolina Constitution

constitute a legally significant break from the 1877 and 1899

enactments as evidenced by the record containing no evidence

concerning the 1971 Constitution that suggests a discriminatory

motivation behind it. *Hunter*, 471 U.S. at 227-28 ("Official action will

not be held unconstitutional solely because it results in a racially

---

[2]     *See also Cotton v. Fordice*, 157 F.3d 388, 391-92 (5th Cir. 1998)
("Because Mississippi's procedure resulted both in 1950 and in 1968 in a
re-enactment of [the challenged constitutional provision
disenfranchising felons], each amendment superseded the previous
provision and removed the discriminatory taint associated with the
original version."); *Harness v. Watson*, 47 F.4th 296, 311 (5th Cir. 2022)
(reaffirming that the 1968 reenactment of Mississippi's felony
disenfranchisement provisions "superseded the previous provisions and
removed the discriminatory taint associated with the provision adopted
in 1890"), *cert. denied*, 143 S. Ct. 2426 (2023); *Hayden v. Paterson*, 594
F.3d 150, 164-67 (2d Cir. 2010) (holding that plaintiffs adequately
alleged sufficient facts to plausibly show that 1821, 1846, and 1874
enactments were motivated by a discriminatory purpose, but failed to
present the same for the 1894 enactment of the constitutional provision
disenfranchising felons, which contained substantive changes).

disproportionate impact. Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." (cleaned up)). In fact, the drafters of the new Constitution expressed the motivation to eliminate "provisions that are invalid because [they are] in conflict with the Constitution of the United States, such as the provision on racial segregation in the public schools." JA 450, 455. At the same time, as noted, the drafters simultaneously expanded the reach of felony disenfranchisement to bar persons convicted of federal and out-of-state felonies from voting. The General Assembly then voted with near unanimity to approve the Constitution and put it before the people for a vote. *See* JA 1313, 1316. The voters of North Carolina also approved the new Constitution, including the expanded felony-based disenfranchisement provision, by an overwhelming majority. JA 1318.

Thus, North Carolinians "willingly broadened" that provision, *see Cotton*, 157 F.3d at 391 n.8, while at the same time approving a constitution that was designed to eliminate unconstitutional provisions on racial segregation. *See Cotton*, 157 F.3d at 391-92 (holding that expansion of felony disenfranchisement through a constitutional

amendment process approved by the legislature and voters removed the discriminatory taint associated with the original provision); *see also* JA 450, 455, 531. The democratic process found in North Carolina long since the original enactment of section 163-275(5) is difficult to square with a current and ongoing discriminatory intent.

Because Plaintiffs have failed to present evidence of a discriminatory motive behind the 1971 Constitution that substantively altered the scope of section 163-275(5), the district court erred when it concluded that the law violated the Equal Protection Clause.

### B.       The district court erred by concluding that section 163-275(5) violates due process.

The district court also erred in granting Plaintiffs summary judgment on their claim that the prior version of section 163-275(5) is unconstitutionally vague. Contrary to what the court concluded, the evidence presented by Plaintiffs demonstrated an exercise of prosecutorial discretion, not arbitrary enforcement of the law resulting from the text of the law.

The Due Process Clause prohibits a "criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so

standardless that it invites arbitrary enforcement." *Beckles v. United States*, 580 U.S. 256, 262 (2017) (cleaned up). For a vagueness claim to prevail, a statute must be "vague 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.'" *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 495 n.7 (1982) (quoting *Coates* v. *Cincinnati*, 402 U.S. 611, 614 (1971)).

1. **The district court erred when it granted summary judgment on an unpled theory of liability.**

As an initial matter, it bears noting that Plaintiffs' due process theory has repeatedly evolved over the course of this case without the later claims being included in their pleadings. Plaintiffs' Amended Complaint claimed that section 163-275(5) was unconstitutionally vague for two reasons: (1) It does not define what crimes "exclude[] the person from the right of suffrage," and (2) it does not explain how an individual may be "restored to the right of citizenship." JA 184-185. In their summary judgment arguments below, Plaintiffs abandoned the

former argument regarding the absence of what crimes exclude a person from the right to vote. They continued to maintain the latter argument, *see* JA 317-322, which the district court rejected by holding that section 163-275(5) "provides fair notice to ordinary individuals," JA 1563.

However, in their summary judgment briefing, Plaintiffs also asserted, for the first time, a new theory of liability. Specifically, Plaintiffs claimed that because some district attorneys declined prosecution of some cases, that meant the statute had been arbitrarily enforced. JA 320-322. It was this latter theory of liability, which appears nowhere in the operative complaint, that the district court relied on to conclude that the law was so vague that it denied Plaintiffs due process. But it is well established that "a plaintiff may not raise new claims after discovery has begun without amending his complaint." *Cloaninger ex rel. Estate of Cloaninger v. McDevitt*, 555 F.3d 324, 336 (4th Cir. 2009); *see also Quillen v. Int'l Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir. 1986) ("[A] court will not imply consent to try a claim merely because evidence relevant to a properly pleaded issue incidentally tends to establish an unpleaded claim."). The district

court's due process ruling based on an unpled theory raised for the first time in Plaintiffs' summary judgment briefing violated that principle. For this reason alone, the district court's decision should be reversed.

> **2.      An exercise of prosecutorial discretion does not render a statute unconstitutionally vague.**

Even if the district court's decision to rule on a theory nowhere pleaded in Plaintiffs' complaint were disregarded, this Court should still reverse the ruling on that claim.  Below, the district court incorrectly held that the exercise of prosecutorial discretion by North Carolina's district attorneys qualified as arbitrary enforcement, thus demonstrating the purported vagueness of the statute.

In reaching its holding, the district court relied on *Kolender v. Lawson*, 461 U.S. 352 (1983).  JA 1563.  In that case, the U.S. Supreme Court held that a law, to comport with due process, must be clear enough to preclude "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections." *Kolender*, 461 U.S. at 358 (quoting *Smith v. Goguen*, 415 U.S. 566, 574 (1974)).

*Kolender* specifically involved a challenge to a criminal statute that required "persons who loiter or wander on the streets to provide a 'credible and reliable' identification and to account for their presence when requested by a peace officer under circumstances that would justify a stop under the standards of *Terry v. Ohio*, 392 U.S. 1 (1968)." *Kolender*, 461 U.S. at 353. The Supreme Court held the use of the phrase "credible and reliable" to be so subjective that it invited arbitrary enforcement by law enforcement officers who must be subjectively satisfied by the identification produced or else they could arrest the person. *Id.* at 353, 358-61.

Here, section 163-275(5) contains no similarly subjective language that would invite arbitrary enforcement. The elements of the crime defined by the statute, and therefore the evidence necessary to prove a violation, are simple and objective. Indeed, the district court found that section 163-275(5) is capable of being understood by ordinary individuals. JA 1563. The law defines the class of persons it applies to (persons convicted of a felony who have not had their rights restored) and the prohibited act (voting in an election). Executive officials

enforcing the law need not engage in any subjective determinations.  A

straightforward statute like section 163-275(5) does not invite "a

standardless sweep" subject to "personal predilections." *Kolender*, 461

U.S. at 358 (quoting *Goguen*, 415 U.S. at 574).

Nor does an exercise of prosecutorial discretion equate to

"arbitrary enforcement" of a statute.  *See Spence v. Washington*, 418

U.S. 405, 414 n.9 (1974) (rejecting void-for-vagueness challenge where

the "statute's application [was] quite mechanical" and stating "if

selective enforcement has occurred, it has been a result of prosecutorial

discretion, not the language of the statute"); *see also McCleskey v.

Kemp*, 481 U.S. 279, 311 (2007) (recognizing that prosecutorial

discretion is a foundational element of our criminal justice system);

*Savage v. Maryland*, 896 F.3d 260, 270 (4th Cir. 2018) (noting whether

to prosecute "is in the heartland of the prosecutorial discretion").

The district court below ruled to the contrary, basing that decision

on a small number of letters hand-picked by Plaintiffs where certain of

the district attorneys explained that they had declined to prosecute

persons who voted without knowing that the law barred them from

doing so.  These letters, the district court held, meant that section 163-275(5) has been subject to inconsistent interpretations or enforcement, resulting in a standardless sweep.  JA 1563-1566.  This ruling was incorrect.  The letters cited by the district court merely reflect ordinary prosecutorial discretion, a foundational element of our criminal justice system.  Notably, in the cited letters, no district attorneys stated that they were declining to prosecute persons who voted illegally without scienter because they believed that section 163-275(5) was itself vague or ambiguous concerning whether such prosecutions were allowed.  JA 1565 (citing JA 704, 708-709, 1022-1024, 1033).

The district court acknowledged the role of prosecutorial discretion, but then reframed their choice not to prosecute as evidence that prosecutors are unable to understand the elements of section 163-275(5).  JA 1564-1566.  The district court drew a distinction between prosecutors declining to prosecute due to insufficient evidence and "believ[ing] the criminalizing statue requires intent."  JA 1564.

This logic misunderstands both the nature of prosecutorial discretion and the declination letters.  Prosecutors have broad leeway to

40

decide when criminal charges should be pursued, in the interest of justice, including where the public good may be best served by declining to prosecute a strict liability offense. Their discretion to decline prosecution is not limited to cases where there is insufficient evidence. Society benefits from a prosecutor's weighing of case-specific factors, including the social value of obtaining a conviction, likelihood of success, the time and expense to the State, and the prosecutor's own sense of justice. *See State v. Spicer*, 299 N.C. 309, 311-12, 261 S.E.2d 893, 895 (1980) ("The proper exercise of [a prosecutor's] broad discretion in his consideration of factors which relate to the administration of criminal justice aids tremendously in achieving the goal of fair and effective administration of the criminal justice system.").

Rather than demonstrating a misunderstanding of the law, the declination letters in the record and cited below instead demonstrate a thoughtful and practical exercise of prosecutorial discretion. The referenced letters demonstrate that multiple considerations went into the decisions by the respective district attorneys to decline prosecution. The letters include concerns about the likelihood of obtaining a

conviction based in part on the historical track record for these kinds of cases with similar evidence. The prosecutors also noted their concerns about the wisdom of prosecuting these cases due to other factors, including the shortcomings of the probation and parole system to notify offenders they are prohibited from voting; the manner in which those on community supervision are educated about their rights; the documentation that is provided to such individuals; and the flaws in the registration system that sometimes fail to prevent felons from registering. JA 1565 (citing JA 704, 708-709, 1022-1024, 1033). This thoughtful exercise of discretion is exactly as it should be.

The October 11, 2018 letter written by District Attorney Ernie Lee demonstrates this point. JA 708-709. In his letter, DA Lee explained that regardless of the elements of the statute, juries refused to return guilty verdicts without evidence that the voter knew they could not vote. JA 708. DA Lee noted he had discussed the difficulties in successfully prosecuting these cases with other prosecutors across the state and pointed out that the defense in these cases was arguing a lack of *mens rea*. JA 708. DA Lee stated that "notification and knowledge

*are not required evidence to prove violation* of the felon voter statute,"

however, "[b]ased on the substantial challenges of obtaining a

conviction beyond a reasonable doubt based upon the notification

issues," he would not prosecute the referrals. JA 709 (emphasis added).

Contrary to the district court's conclusion, this letter does not

demonstrate that DA Lee believed the statute itself would require a

showing of knowledge. *See* JA 1565. Instead, it shows that DA Lee,

like his colleagues, was weighing case-specific factors as to the value of

pursuing prosecution, just as he should.

Notwithstanding the above, the district court extrapolated from

these summary letters the unsupported conclusion that certain district

attorneys, because they based their decision on factors beyond the

elements of the statute, have misinterpreted section 163-275(5). JA

1565. Under this theory, the exercise of prosecutorial discretion by one

district attorney not to initiate a prosecution while another district

attorney chooses to prosecute based on similar facts necessarily means

a law is being arbitrarily enforced. That cannot be correct. If that were

the law, then every criminal statute would become unconstitutional the

moment two of the 42 different district attorneys in North Carolina exercise the powers of their office differently. Of equal concern, it would undermine prosecutorial discretion in general, which the U.S. Supreme Court has deemed a foundational element of our criminal justice system. *See McCleskey*, 481 U.S. at 311.

Because section 163-275(5) is clear and does not invite arbitrary enforcement, this Court should reverse the district court's ruling below as to Plaintiffs' due process claim.

## CONCLUSION

Defendants respectfully request that this Court reverse the judgment below.

Dated: November 21, 2024.     Respectfully submitted by:

JOSHUA H. STEIN
Attorney General

/s/ Mary Carla Babb
Mary Carla Babb
Special Deputy Attorney General
N.C. State Bar No. 25731
Email: mcbabb@ncdoj.gov

Terence P. Steed
Special Deputy Attorney General
N.C. State Bar No. 52809
Email: tsteed@ncdoj.gov

*Counsel for State Board
Defendants*

/s/ Elizabeth Curran O'Brien
Special Deputy Attorney General
N.C. State Bar No. 28885
Email: eobrien@ncdoj.gov

*Counsel for District Attorney
Defendants*

N.C. Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
Telephone: (919) 716-6400

## CERTIFICATE OF SERVICE

I certify that on this day I filed the foregoing document with the

Clerk of Court using the CM/ECF system, which will automatically

serve electronic copies on all counsel of record.

Dated:  November 21, 2024.

/s/ Mary Carla Babb
Mary Carla Babb
Special Deputy Attorney General

# CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the length requirements of Fed. R. App. P. 32(a)(7) because it contains 7,927 words, excluding the items listed in Fed. R. App. P. 32(f), as measured by Microsoft Word. This brief further complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) & (6) because it has been prepared in a proportionally spaced typeface:  14-point Century Schoolbook font.

Dated:  November 21, 2024.

/s/ Mary Carla Babb
Mary Carla Babb
Special Deputy Attorney General