No. 24-1512

## In the United States Court of Appeals
## for the Fourth Circuit

NORTH CAROLINA A. PHILIP RANDOLPH INSTITUTE; ACTION NC,

*Plaintiffs-Appellees*,

v.

NORTH CAROLINA STATE BOARD OF ELECTIONS, et al.,

*Defendants-Appellants.*

———————————

On Appeal from the United States District Court
for the Middle District of North Carolina

———————————

## DEFENDANTS-APPELLANTS' REPLY BRIEF

———————————

Dated: January 27, 2025

JEFF JACKSON
ATTORNEY GENERAL
N.C. Department of Justice
Post Office Box 629
Raleigh, NC 27602
(919) 716-6400

Terence Steed
Mary Carla Babb
Special Deputy Attorneys General
tsteed@ncdoj.gov
mcbabb@ncdoj.gov
*Counsel for State Board Defendants*

Elizabeth Curran O'Brien
Special Deputy Attorney General
eobrien@ncdoj.gov

*Counsel for District Attorney Defendants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... iii

INTRODUCTION ...................................................................................... 1

ARGUMENT ............................................................................................. 3

I.    The Amendment to the Challenged Statute Provided the Relief Sought by Plaintiffs, Rendering this Case Moot. ............ 3

II.    The District Court Erred in Concluding Due Process Was Violated Based on Unpled Arbitrary Enforcement Allegations using a Flawed Analysis Plaintiffs Ask this Court to Repeat. ........................................................................... 9

    A.    The Amended Complaint did not provide adequate notice of Plaintiffs' unpled theory of liability..................... 9

    B.    Applying judicial scrutiny to discretionary prosecutorial decisions in this context is inappropriate. .................................................................. 11

CONCLUSION ....................................................................................... 16

CERTIFICATE OF SERVICE ............................................................... 18

CERTIFICATE OF COMPLIANCE ...................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Barclay White Skanska, Inc. v. Battelle Mem'l Inst.*,
262 F. App'x 556 (4th Cir. 2008) (unpublished) ....................................9

*Bordenkircher v. Hayes*, 434 U.S. 357 (1978) ........................................14

*City News & Novelty, Inc. v. City of Waukesha*,
531 U.S. 278 (2001) ...................................................................................6

*Colautti v. Franklin*, 439 U.S. 379 (1979)...............................................12

*Gilmour v. Gates, McDonald & Co.*,
    382 F.3d 1312 (11th Cir. 2004) ......................................................9

*Goldstein v. Moatz,* 364 F.3d 205 (4th Cir. 2004) ..................................15

*Imbler v. Pachtman*, 424 U.S. 409 (1976) ...............................................15

*Lancaster v. Sec'y of the Navy*, 109 F.4th 283 (4th Cir. 2024).................7

*Nero v. Moseby*, 890 F.3d 106 (4th Cir.), *cert. denied*,
139 S. Ct. 490 (2018) ...............................................................................14

*Newton v. Rumery,* 480 U.S. 386 (1987) .................................................13

*Reno v. American-Arab Anti-Discrimination Comm.*
    525 U.S. 471 (1999) .......................................................................13

*United States v. Springer*, 715 F.3d 535 (4th Cir. 2013) ......................3, 8

*United States v. Lovasco*, 431 U.S. 783 (1977) .................................13, 14

iii

*U.S. Dep't of Treasury v. Galioto*, 477 U.S. 556 (1986) ................... 5, 6, 8

*Wayte v. United States*, 470 U.S. 598 (1985) .......................................... 13

**Statutes**

N.C. Gen. Stat. § 163-275(5) ........................................................ 1, 3, 4, 9

## INTRODUCTION

Plaintiffs' brief fails to show why this Court should affirm the district court's decision. Defendants continue to rely on the arguments made in the opening brief, and for all the reasons discussed, this Court should reverse.  Defendants reply here to address a few, specific arguments Plaintiffs raise in this Court to support their contentions that this action is not moot and that N.C. Gen. Stat. § 163-275(5) violated due process.

First, the amendment to section 163-275(5) provided the relief Plaintiffs wanted, rendering their case moot.  Plaintiffs' brief argues otherwise.  But from the beginning, Plaintiffs expressed their desire to have a scienter requirement added to what they consistently called the "Strict Liability Voting Law."  Plaintiffs claimed that because the law lacked such a requirement, they were forced to divert substantial resources to educate voters about whether they could legally vote.  Once the law was amended to insert a scienter requirement, however, the relief Plaintiffs sought was no longer available or needed, mooting the case.  After the amendment, Plaintiffs attempted, as they continue to do in their brief on appeal, to maintain the present action by claiming to

seek different relief. According to Plaintiffs' brief, their case is still live as long as *any* potential for relief exists, even if it was not the relief they originally desired, or if the harm originally claimed no longer exists to be remedied, and even if the harm and potential relief that they now claim is vague and speculative. But swapping horses mid-race, after you receive what you wanted and claimed would remedy your harm, cannot resurrect a moot case or controversy. What is more, it is left entirely vague how Plaintiffs suffer, if at all, under the statute as amended, and the potential relief they now claim exists is wholly speculative.

Second, despite what is argued in Plaintiffs' brief, they did not put Defendants on notice that they would rely on arbitrary enforcement to support their request for summary judgment on their due process claim. A review of the very pleading they contend gave proper notice, their Amended Complaint, shows this was simply not the case.

Third, in attempting to support their argument that the district court correctly found arbitrary enforcement, Plaintiffs' brief relies heavily on the flawed premise that courts should closely scrutinize exercises of prosecutorial discretion to determine precisely the reason

2

why a prosecutor made a decision in order to then determine whether a statute is unconstitutionally vague. The district court leaned into this same notion. But it has long been established that courts must show restraint in reviewing exercises of prosecutorial discretion, a bedrock principle in our jurisprudence. For that reason, the Court should decline Plaintiffs' request to closely examine what few declination letters are in the record and to require district attorneys submit affidavits to explain them. The district court erred in doing just that. In fact, that Plaintiffs would even suggest this analysis demonstrates the error in the district court's decision.

## ARGUMENT

### I.    The Amendment to the Challenged Statute Provided the Relief Sought by Plaintiffs, Rendering this Case Moot.

This matter is moot. Plaintiffs lost their concrete interest when the statute at issue—N.C. Gen. Stat. § 163-275(5)—was amended in a way that provided the relief they desired. *See United States v. Springer*, 715 F.3d 535, 540 (4th Cir. 2013) (providing that for a case to proceed, each party must "retain a concrete interest in the outcome of the litigation throughout all stages of the proceedings," and if no concrete interest exists such that the court cannot "grant *any* effectual

relief," then the case is moot).

Plaintiffs had originally complained that the statute lacked a scienter requirement. Plaintiffs in fact repeatedly referred to the challenged statute as the "Strict Liability Voting Law." *See, e.g.*, JA 130-89 (amended complaint); JA 292-322 (memo in support of summary judgment motion). Plaintiffs claimed that the lack of a scienter requirement caused voters who were unaware of their inability to legally vote to still be prosecuted for voting. According to Plaintiffs, this required them to divert substantial resources to educate voters about whether they could legally vote. JA 182-83.

But then the statute was amended during the pendency of this case to add a scienter requirement. JA 1379. Once the statute was amended, the old version became inapplicable to elections held after January 1, 2024.[1] As such, any voters who are unaware of whether they can legally vote do not have to worry about being prosecuted under the statute in the future. And so, as noted by the magistrate judge below, Plaintiffs "can no longer claim that they must divert substantial

---

[1]    Notably, Plaintiffs thereafter began referring to pre-amendment Section 163-275(5) as simply "the Law." *See, e.g.*, JA 1380-85.

4

resources to educate volunteers and prospective voters regarding the new law because much of the confusion concerning one's eligibility to vote has been eliminated." JA 1415. The relief that Plaintiffs sought in this case—protection from "an unwarranted drain on resources" and a reduced "risk of voter confusion"—is therefore no longer available or necessary. Resp. Br. at 37. As a result, their claims are moot.

In *U.S. Dep't of Treasury v. Galioto*, the plaintiff originally complained of a statute which did not allow the purchase of a gun by any individual, such as the plaintiff, who had previously spent time in a mental institution. 477 U.S. 556 (1986). The district court below had ruled the statute unconstitutional, because it allowed other individuals, such as felons, to apply for administrative relief from the statute's ban. *Id.* at 558. But during the pendency of the case, Congress amended the statute to allow *any* individual to apply for relief, including the plaintiff. *Id.* at 559. The Court noted that the statute's amendment "significantly alter[ed] the posture" of the case because the plaintiff now had access to the administrative remedy that he *originally* desired. *Id.* The Court held that his claims had therefore become moot. *Id.* at 559-60.

Here, Plaintiffs originally complained that the statute was

unconstitutional and that it burdened their organizations by requiring extra resources to educate voters. But when the statute was amended, just as in *Galioto*, Plaintiffs received the relief they had *originally* desired. As a result, the amendment took away any possible burden on Plaintiffs and removed their original "concrete interest." And like in *Galioto*, that amendment makes Plaintiffs' claims moot.

In arguing otherwise in the Response Brief, Plaintiffs fail to provide any "specific facts to substantiate that they will certainly need to divert significant resources" to educate voters now that the law has changed. JA 1416. "It is far from clear" how plaintiffs "actually suffer" currently under this statute. *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 283 (2001) (concluding that a live controversy could not be maintained based on speculation). Plaintiffs cannot now seek a different relief simply because the statute changed in a way that affords them the relief they originally asked for in their complaint. In fact, the Executive Director of N.C. APRI previously stated in his affidavit that if the statute "applied only to individuals who voted with fraudulent intent, then [APRI] would not have to spend so much of [its] time and resources on preventing mistakes, which happen very rarely"

6

and instead could "focus [its] efforts on encouraging eligible individuals to register to vote and to vote." JA 1244-45. Plaintiffs can now do just that because the statute *has* changed exactly as desired.

There are two other, related contentions in Plaintiffs' brief that are worth addressing here. First, Plaintiffs claim Defendants argued that mootness should be considered on a "cause of action by cause of action" basis, requiring a court to analyze "each theory of liability presented," without regard given to the requested relief. Resp. Br. at 38. Plaintiffs argue instead that mootness is to be considered through a "claim by claim" analysis that focuses on the corresponding relief requested. *Id.* at 37.

Plaintiffs misunderstand Defendants' argument. Defendants agree with Plaintiffs that mootness is to be considered "claim by claim." *See* Op. Br. at 27; Resp. Br. at 37-38 (collecting cases). And as Plaintiffs point out, that method harmonizes with *Lancaster v. Sec'y of the Navy*, in which this Court based its mootness analysis on the types of relief requested for each claim. 109 F.4th 283, 289 (4th Cir. 2024).

Second, and related to the first, the district court erred below because it did not analyze each claim for mootness. Instead, the court

allowed all claims to continue after determining that only one of the claims—whether the statute was overly vague on how an individual could restore his voting rights—still had potential relief and, therefore, was not moot.[2] *See* JA 1540.

But that claim—and its corresponding relief—is entirely distinct from the plaintiffs' other claims and reliefs sought. As noted above, the original relief that Plaintiffs sought in their amended complaint has already been provided by the amended statute. *See, e.g.*, *Galioto*, 477 U.S. at 559 (holding that the claims had become moot because the statute at issue had been amended in a way that invalidated the *original relief sought* (emphasis added)). Therefore, even if the district court properly considered the one claim that still had a possible "effectual relief," *Springer*, 715 F.3d at 540, it should have still gone through the remaining claims and recognized they had all become moot after the statute's language was amended.

---

[2]    Notably, the district court rejected that claim after the court considered it on the merits.  JA 1563.

**II.    The District Court Erred in Concluding Due Process Was Violated Based on Unpled Arbitrary Enforcement Allegations using a Flawed Analysis Plaintiffs Ask this Court to Repeat.**

**A.    The Amended Complaint did not provide adequate notice of Plaintiffs' unpled theory of liability.**

Plaintiffs contend Defendants had sufficient notice of their new, unpled arbitrary enforcement vagueness claim because the declination letters are mentioned in their Amended Complaint. Resp. Br. at 57. However, this Court has recognized that "despite the liberal pleading rules outlined by the Supreme Court, plaintiffs may not raise new claims without amending their complaints after discovery has begun." *Barclay White Skanska, Inc. v. Battelle Mem'l Inst.*, 262 F. App'x 556, 563 (4th Cir. 2008) (unpublished) (citing *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).

In their Amended Complaint, Plaintiffs alleged that section 163-275(5) is unconstitutionally vague because the law did not define what crimes exclude a person from suffrage or describe how an individual may be restored the right of citizenship, and because a prospective voter must look to another statute to answer the latter question. JA 165-166. Plaintiffs also alleged State Board voting materials were confusing to prospective voters, and courts and probation officers do not fully inform

9

felons of their disenfranchisement. JA 169-182. The Amended

Complaint repeatedly alleges that *voters* were confused about the law,

not district attorneys. JA 184. The phrase "arbitrary enforcement" does

not appear in the Amended Complaint. and Plaintiffs certainly do not

take issue with prosecutors who declined to prosecute felon voters.

Nonetheless, Plaintiffs contend on appeal that merely mentioning

the declination letters in the Amended Complaint satisfies the notice

pleading standard. Resp. Br. at 57. However, the placement of

Plaintiffs' factual allegation regarding those letters and its context show

that Plaintiffs offered this allegation for a completely different purpose

– to support their broader factual allegation in that same paragraph

that many voters did not know they were ineligible to vote. JA 168. In a

footnote to this paragraph, Plaintiffs direct the Court to a letter written

by the president of the Conference of District Attorneys. JA 168; *see also*

District Ct. Dkt. Entry 1-8 [D.E. 1-8]. In it, the president notes district

attorney concerns about the process of informing felons regarding their

voting rights. Specifically, she notes the following:

> [W]hen assessing any potential case alleging violations of
> the felon voter statute there are many factors to take into
> account. Each must be evaluated on a case by case basis to
> determine if there were violations beyond a reasonable doubt

10

which can be proven, and if so, what action the State should
take. Providing individuals with the necessary verifiable
notifications will assist in making those decisions.

[D.E. 1-8].

Plaintiffs cannot credibly contend that Defendants were on notice
of their arbitrary enforcement vagueness claim when Plaintiffs' own
evidence details how information about a voter's knowledge or intent is
used by prosecutors – not to establish proof beyond a reasonable doubt,
but rather to assist prosecutors with making decisions whether to
pursue a prosecution.  Plaintiffs' inclusion of the letters in the Amended
Complaint not only fails to provide notice of its arbitrary enforcement
claim, it supports Defendants' argument that the declinations were a
valid exercise of prosecutorial discretion.

**B. Applying judicial scrutiny to discretionary prosecutorial decisions in this context is inappropriate.**

The district court found that "a distinction must be drawn between
(1) the decision to pursue a case being based on whether or not the
prosecutor believes sufficient evidence is present and (2) the decision to
pursue a case being based on whether or not the prosecutor believes the
criminalizing statute requires intent." JA 1564.  However, there is no

meaningful distinction to be drawn. Contrary to the general presumption against judicial review of prosecutorial decisions, both assessments require a court to scrutinize individual exercises of prosecutorial discretion. This is particularly inappropriate here where district attorneys declined to initiate a prosecution to begin with. *See e.g.*, *Colautti v. Franklin*, 439 U.S. 379, 390 (1979) (A statute violates the "arbitrary enforcement" requirement if it is "so indefinite that it encourages arbitrary and erratic arrests and convictions."). An arbitrary enforcement claim makes little sense in this context.

Plaintiffs' invitation to the Court to parse, sentence by sentence and word by word, a handful of declination letters, which district attorneys were under no obligation to write, and scrutinize individual charging decisions, which district attorneys were under no obligation to explain, demonstrates precisely why the district court's decision was erroneous. Indeed, Plaintiffs contended at summary judgment that the Court must separate prosecutors' "ultimate decisions with the rationale" behind them. JA 1332. Plaintiffs' suggestion that the district attorneys should have "submitted affidavits in the District Court to provide admissible evidence that they were actually exercising

12

prosecutorial discretion rather than interpreting the statute" further
illustrates the logical fallacy of the district court's ruling. Resp. Br. at
55-56.

One of the broadest exercises of discretion in American
jurisprudence is prosecutorial discretion, which includes the discretion
to determine who will and will not be prosecuted for a crime. There is a
"presumption that a prosecutor has acted lawfully," *Reno v. American-
Arab Anti-Discrimination Comm*. 525 U.S. 471, 489 (1999), and courts
must practice restraint when reviewing prosecutorial decisions. *Newton
v. Rumery*, 480 U.S. 386, 396 (1987). "Because [prosecutorial] decisions
are not readily susceptible to the kind of analysis the courts are
competent to undertake," courts are "properly hesitant to examine the
decision whether to prosecute." *Id*. (quoting *Wayte v. United States*, 470
U.S. 598, 607-08 (1985)).

The Supreme Court has recognized that "[t]he decision to file
criminal charges, with the awesome consequences it entails, requires
consideration of a wide range of factors in addition to the strength of the
Government's case, in order to determine whether prosecution would be
in the public interest." *United States v. Lovasco*, 431 U.S. 783, 794

13

(1977) (noting "[a]lthough proof of the identity of the mail thieves was not necessary to convict respondent of the possessory crimes with which he was charged, it might have been crucial in assessing respondent's culpability, as distinguished from his legal guilt.").

Courts generally only undertake judicial review of prosecutorial decisions in assessing claims of selective or vindictive prosecution. But even there, "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation so long as the selection was not deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (cleaned up).

To be clear, none of the district attorneys were required to explain their decision not to initiate a prosecution. A prosecutor can decline to bring charges for nearly any reason or no reason at all. But in cases where a prosecutor discusses a prosecutorial decision, this Court has recognized the danger of opening up statements explaining prosecutorial decisions to liability. *Nero v. Moseby*, 890 F.3d 106, 131-32 (4th Cir.) (Wilkinson, J., concurring) ("To say that an elected official exposes herself to liability by discharging her democratic duty to justify

14

the decisions she was elected to make is to elevate tort law above our most cherished constitutional ideals."), *cert. denied*, 586 U.S. 999 (2018).

If the district court and Plaintiffs are correct, then any criminal prosecution (or absence of prosecution) is subject to a void for vagueness arbitrary enforcement challenge, and the only way a district attorney can defeat the claim is by providing a sworn affidavit explaining his or her prosecutorial decision-making. This type of judicial scrutiny is untenable and contrary to decades of jurisprudence protecting the prosecutorial function. *See e.g. Imbler v. Pachtman*, 424 U.S. 409, 427-28 (1976) ("[T]he vigorous and fearless performance of the prosecutor's duty [] is so essential to the proper functioning of the criminal justice system."); *Goldstein v. Moatz*, 364 F.3d 205, 212 (4th Cir. 2004) ("[T]he purpose of absolute immunity is not to protect an erring official, but to insulate the decisionmaking process from the harassment of prospective litigation." (cleaned up)). Plaintiffs ask the Court to engage in a type of judicial scrutiny of prosecutorial decisions our courts have never condoned.

## CONCLUSION

For the reasons stated in this Reply and in the Opening Brief, Defendants respectfully request that this Court reverse the judgment below.

Dated: January 27, 2025.       Respectfully submitted by:

JEFF JACKSON
Attorney General

/s/ Mary Carla Babb
Mary Carla Babb
Special Deputy Attorney General
N.C. State Bar No. 25731
Email: mcbabb@ncdoj.gov

Terence P. Steed
Special Deputy Attorney General
N.C. State Bar No. 52809
Email: tsteed@ncdoj.gov

*Counsel for State Board Defendants*

/s/ Elizabeth Curran O'Brien
Special Deputy Attorney General
N.C. State Bar No. 28885
Email: eobrien@ncdoj.gov

*Counsel for District Attorney Defendants*

N.C. Department of Justice
Post Office Box 629

16

Raleigh, North Carolina 27602
Telephone: (919) 716-6400

**CERTIFICATE OF SERVICE**

I certify that on this day I filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically serve electronic copies on all counsel of record.

Dated: January 27, 2025.

/s/ Mary Carla Babb
Mary Carla Babb
Special Deputy Attorney General

18

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the length requirements of Fed. R. App. P. 32 because it contains 2962 words, excluding the items listed in Fed. R. App. P. 32(f), as measured by Microsoft Word. This brief further complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) & (6) because it has been prepared in a proportionally spaced typeface: 14-point Constantia font.

Dated: January 27, 2025.

/s/ Mary Carla Babb
Mary Carla Babb
Special Deputy Attorney General

19